UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSEPH E. FLOYD,

      Petitioner,

v.                                                            Case No. 3:19cv1949-LC-HTC

RICKY D. DIXON, Secretary,
Department of Corrections,[1]

      Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

Petitioner, Joseph E. Floyd ("Petitioner" or "Floyd"), proceeding *pro se*, filed a petition under 28 U.S.C. § 2254 challenging his conviction and sentence in the circuit court of Okaloosa County, Florida, for unlawfully conducting or participating in an enterprise through a pattern of racketeering activity. ECF Doc. 1. The Respondent filed an answer (ECF Doc. 12). Petitioner was granted leave to file a reply (ECF Doc. 13), but none was filed. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the petition and the Secretary's answer,

---

[1] Ricky D. Dixon succeeded Mark S. Inch as Secretary of the Department of Corrections and is automatically substituted as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

the undersigned recommends the petition be DENIED without an evidentiary hearing.

# I.    BACKGROUND FACTS AND PROCEDURAL HISTORY

## A.    Offense and Conviction

Floyd was charged by a Third Amended Information in Okaloosa County, Florida, circuit court case number 2012-ACF-456 with violation of Florida's RICO Act.[2]  ECF No. 12-2 at 135-36.  The information alleged Petitioner, while employed as a police officer, engaged in a pattern of racketeering activity, defined as engaging in at least two incidents of racketeering conduct consisting of crimes chargeable under specifically listed Florida statutes from January 9, 2007, to March 5, 2012. *See* § 895.02(1), (4), Fla. Stat. (2012).  A statement of particulars to the third amended information described more than thirty incidents of alleged predicate crimes: false official statements, battery, assault, official misconduct, bribery, extortion, tampering with or harassing a witness, and tampering with or fabricating physical evidence.  ECF No. 12-2 at 141.  An amended statement of particulars was later filed correcting the year of one predicate incident of assault.  ECF No. 12-2 at 212-14.  Jury trial commenced on August 13, 2013, and concluded on August 22, 2013.  ECF No. 12-6 at 48 through ECF No. 12-14 at 209.  Floyd was found guilty

---

[2] Sections 895.01-.06, Fla. Stat., known as the "Florida RICO (Racketeer Influenced and Corrupt Organization) Act."

as charged.  ECF No. 12-14 at 200.  He was sentenced to twelve years in prison.
ECF No. 12-5 at 205-06.

The State presented fifty-five witnesses and more than fifty exhibits to prove
the dozens of predicate racketeering incidents alleged in the case.[3]  These witnesses
and exhibits showed that Floyd engaged in a multitude of misconduct ranging from
committing battery on a former girlfriend and arrestees to touching a female police
officer's breast through her uniform.  The witnesses testified about several instances
of Floyd unnecessarily using a taser on suspects.  The witnesses, including other
officers, also testified about multiple instances of Floyd submitting fraudulent
documents, both as part of his application for a position with the Crestview Police
Department, and after he was employed by them, and causing and threatening others
to do the same.  Given the extensive evidence presented, the undersigned will not
detail the evidence presented other than as necessary to discuss each of the issues
raised in the petition.

B.    **Procedural History and Timeliness under the Antiterrorism
       Effective Death Penalty Act ("AEDPA")**

Under the AEDPA, a § 2254 petition must be filed within one year of certain
"trigger dates." 28 U.S.C. 2244(d)(1).  Here, the applicable trigger date is "the date
on which the judgment became final by the conclusion of direct review or the

---

[3] *See* ECF No. 12-6 at 48 through ECF No. 12-14 at 207, for discussion of evidence presented at
trial.

expiration of the time for seeking such review." *Id.* at § 2244(d)(1)(A). Additionally, the limitations period is tolled for the time during which a "properly filed" application for postconviction relief or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2).

Petitioner filed a timely direct appeal of his judgment and sentence to the First District Court of Appeal ("First DCA"), which resulted in a *per curiam* affirmance without a written opinion effective September 21, 2015. *See Floyd v. State*, 175 So. 3d 289 (Fla. 1st DCA 2015) (Table). Under 28 U.S.C. § 2244(d)(1)(A), Petitioner's time under the AEDPA would have begun to run after Monday, December 21, 2015, upon expiration of the 90-days in which he had to seek certiorari in the U.S. Supreme Court from the First DCA's denial of rehearing on September 21, 2015. However, Petitioner tolled the limitations period by filing a motion for reduction or modification of sentence on December 18, 2015, and the period remained tolled until the state court denied that motion on December 22, 2015. ECF No. 12-17 at 1, 25.

The AEDPA time began running again on December 23, 2015, until Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on December 18, 2016, at which time the period was tolled once again. After several amendments, Floyd submitted a second amended Rule 3.850 motion raising nine grounds for postconviction relief, which was denied on July 5, 2018. ECF No. 12-18 at 31. Floyd submitted a timely appeal, and the First DCA affirmed the state

court's denial on May 21, 2019, *Floyd v. State*, 275 So. 3d 1173 (Fla. 1st DCA 2019) (Table), after rehearing, issued its mandate on July 17, 2019.

Before the mandate was issued, and under the prisoner mailbox rule, Petitioner filed the instant federal petition on July 1, 2019. Thus, because only 361 days ran off the AEDPA clock (the period from December 23, 2015 to December 18, 2016), the petition is timely filed.

## II.   LEGAL STANDARDS

### A.   The AEDPA Standard of Review

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under that act, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet

. . . because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

Also, when reviewing a claim under 28 U.S.C. § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Titlow*, 571 U.S. at 18 ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

Finally, Grounds Three through Five are based on trial court error. Petitioner raised the same issues through various motions or objections during the trial and also raised them in his appeal to the First DCA. As stated above, the First DCA affirmed the judgment and conviction without discussion. The unexplained adjudication of the state appellate court is presumed to be on the merits under 28 U.S.C. § 2254(d), absent any indication to the contrary, and is entitled to AEDPA deference. *See Harrington*, 562 U.S. at 98-99. Thus, this Court should not grant relief on this ground unless the state court's determinations were contrary to or an unreasonable application of a federal law as determined by the United States Supreme Court or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See, supra*.

## B.    Ineffective Assistance of Trial Counsel Claims ("IATC")

As discussed below in Grounds Six through Eleven, Floyd raises a number of claims of ineffective assistance of counsel.  An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.  The petitioner bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.  *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  The petitioner must show a reasonable probability—one sufficient to undermine confidence in the outcome—that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Conclusory allegations that the petitioner was prejudiced by counsel's performance are not enough.  *See Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

Also, Petitioner suggests that his IATC claims should be reviewed *de novo* because the Florida First DCA affirmed per curiam without discussion.  ECF No. 1 at 17.  He cites *Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011).  However, that decision was reversed by the Eleventh Circuit in *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012), which explained that a *per curiam* affirmance is presumed to be on the merits, and AEDPA deference will apply, unless the court clearly states that its decision was based solely on a state procedural rule.  *Id.* at 1353.

## III.    DISCUSSION

For the reasons that follow, Petitioner is not entitled to habeas relief because he has not shown that the state court's denial of his claims was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court or was an unreasonable determination of the facts in light of the evidence.  *See* 28 U.S.C. § 2254(d).

### A.    Ground One: Trial Error in Denying Motion to Strike or to Dismiss, and/or Denying Motion for Mistrial Regarding Sexual Battery Allegations

Part of the evidence presented at trial was that relating to a sexual battery Floyd committed on a former girlfriend, M.N.  M.N. testified at trial she filed a complaint but later withdrew it because of Petitioner's status at the police

department.  Namely, as others also testified to at trial, Floyd had a close relationship with the then Chief of Police.

In Ground One Floyd alleges the trial court erred in not excluding evidence related to the battery on M.N. and in not granting a motion for mistrial.  Petitioner contends here, as he did in state court, that the incident with M.N. involved a personal relationship and not his official acts as a police officer and was therefore not related to the predicate incidents necessary to prove the Florida offense of racketeering.  He contends the battery of M.N. did not share a similar intent, result, accomplices, victim, method of commission, or interrelation by distinguishing characteristics, as the other alleged predicate incidents.

At trial, M.N. testified she had been in an intimate relationship with Floyd for a period of time and had gone to his house to confront him about dating her friend. She testified Floyd ripped off her pants and underwear and forced her to have sex. She said that afterwards, Floyd asked her if she was going to report him.  She later filed a complaint with the police department but withdrew it because she thought based on Floyd's position in the police department that the complaint would not go anywhere, and she was afraid of retaliation.  ECF No. 12-10 at 135-145.

A Crestview Police officer testified Floyd talked to him about M.N.'s complaint and that Floyd denied it, stating he was on a traffic stop at the time of the incident.  ECF No. 12-10 at 163, 166.  After the sexual battery allegation was made,

Floyd joked at the police station about the complaint and about duct taping women. ECF No. 12-10 at 152, 167.  In denying the motion to dismiss and to strike, the trial court noted that, while the incident might have been personal between Floyd and M.N., his bragging about it at the police station was relevant to the charges.  ECF No. 12-10 at 140.[4]

Whether the evidence of Petitioner's battery on M.N., his later defense that he was at work at the alleged time of the incident, and his comments and jokes at the Crestview Police Department about the battery complaint were properly admitted in a Florida RICO prosecution is a matter of state law not generally cognizable on federal habeas review.  The federal courts "have long recognized that 'a mere error of state law' is not a denial of due process." *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n.21 (1982)).  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1983).  A claim grounded on issues of state law provides no basis for federal habeas relief because a violation of a state law is not, in itself, a violation of the federal constitution. *Engle*, 456 U.S. at 120-21; *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (per curiam).

---

[4]  The State also presented evidence that Petitioner engaged in unwanted touching of a female police officer's breast through her uniform while preparing to attend a police funeral.  ECF No. 12-10 at 226-27; 266-68.

Nor is it the province of this Court to review the state trial court's evidentiary rulings under state law, even if Petitioner couches his claim as a denial of federal due process. *See Branan*, 861 F.2d at 1508 (citing *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976) ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.' ")).  Thus, the fact that Floyd refers to deprivation of a "fair trial" in regard to admission of evidence in state court does not change the conclusion that his state law claim is not cognizable in federal habeas review.

Instead, a state court's erroneous admission of evidence will support habeas relief only if the error rises to the level of denial of a constitutional right.  A federal court's inquiry into state evidentiary rulings is severely restricted and is limited to violations of a federally guaranteed right, such as the denial of fundamental fairness. *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014) (citing *Hall v. Wainwright,* 733 F.2d 766, 770 (11th Cir. 1984)).  To prevail on a claim that a trial court's evidentiary ruling violated the Due Process Clause, a defendant must demonstrate that the evidence was "so extremely unfair that its admission violates fundamental conceptions of justice."  *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012) (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  The category of infractions that violate fundamental fairness is very narrow.  *Estelle,* 502 U.S. at

73 (citing *Dowling*, 493 U.S. at 352). Additionally, any such evidentiary error is subject to the harmless error analysis and will not be the basis of federal habeas relief unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993) (citation omitted)).

In light of the totality of the evidence, Petitioner has not demonstrated the state court's admission of evidence of Floyd's battery of M.N. was erroneous or, even if erroneous, that it such error violated concepts of fundamental fairness. In other words, the evidence presented by the State showed that Floyd engaged in at least two, indeed well more than two, incidents of racketeering predicates. For example, in addition to the sexual battery of M.N., the State also presented evidence that Petitioner engaged in unwanted touching of a female police officer's breast through her uniform while preparing to attend a police funeral and joked about it afterward. ECF No. 12-10 at 226-27; 266-68. Petitioner is not entitled to habeas relief on this ground.

**B.    Ground Two: Trial Court Error in Denying Request for Special Verdict Form**

In Ground Two, Petitioner contends the trial court erred by denying his request for a special verdict form requiring the jury to identify which predicate incidents the jurors found the state had proved. He points out here, as he did in state court, that the "two incidents" requirement to prove a pattern of racketeering is not

satisfied when the defendant is found guilty of two incidents arising out of the same transaction on the same date. The undersigned finds the state court's denial of relief to be neither contrary to law nor based on a misapplication of the facts.

Although the trial court denied defense counsel's request for that special verdict form, the court specifically instructed the jury there are three elements to a racketeering claim, including that "Defendant conducted or participated in, directly or indirectly, such enterprise by engaging in at least two of the incidents of racketeering activity", which "had the same or similar intents, results, accomplices, victims, methods of commission, or were interrelated by distinguishing characteristics and were not isolated incidents." The trial court went on to explain to the jury that "The state has alleged multiple incidents of racketeering activity in the statement of particulars. Several of those incidents are listed as occurring on or about the same date. If you find the Defendant did commit, attempt to commit, conspired to commit, or solicit, coerce, or intimidate another person to commit incidents that are alleged to have occurred on the same date, you should consider those incidents as one incident for that date." ECF No. 12-14 at 169-72.

These jury instructions made clear that the jury could only find one predicate incident to have occurred where multiple incidents were alleged on the same date. The jury was also instructed that the "verdict you render must be unanimous; that is, each juror must agree to the same verdict" and that "[y]our verdict must be based on

the evidence and on the law contained in these instructions." ECF No. 12-14 at 185, 186. Thus, any error by the trial court in denying the special verdict form was, at worst, harmless.

"For reasons of finality, comity, and federalism, habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Davis v. Ayala,* 576 U.S. 257, 266 (2015) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). This requires "more than a reasonable probability that the error was harmful." *Brecht,* 507 U.S. at 637 (quotation omitted). To determine whether a trial error was harmless, courts typically consider the magnitude of the error, the effect of any curative instruction, and whether the prosecution otherwise presented overwhelming evidence of guilt to the jury. *See, e.g.*, *Hill v. Turpin*, 135 F.3d 1411, 1416–19 (11th Cir. 1998) (holding that a *Doyle* error was not harmless when the prosecutor's statements were "repeated and deliberate," the trial court's curative instruction was ineffective, there were significant weaknesses in the state's case, and the defendant's credibility was critical to his case).

Under Florida law, it is a "well-established presumption" that jurors will follow the judge's instructions in the absence of any evidence to the contrary. *See, e.g.*, *Crain v. State*, 894 So. 2d 59, 70 (Fla. 2004) (citing *Sutton v. State*, 718 So. 2d 215, 216 & n.1 (Fla. 1st DCA 1998)). This same presumption is present in federal

law.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.") (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *Hallford v. Culver*, 459 F.3d 1193, 1204 (11th Cir. 2006); *United States v. Ramirez*, 426 F.3d 1344, 1352 (11th Cir. 2005).

The jury in this case had before it evidence of numerous qualifying predicate incidents, including many that occurred on different dates.  There is nothing in the state record to indicate that the jury—contrary to express instructions from the court—found Petitioner guilty of only two predicate incidents that occurred on the same date.  The special verdict form was superfluous given the jury instruction. Thus, the undersigned finds no prejudice to the Petitioner by the trial court's decision, even if it was in error.

### C.    Ground Three: Trial Court Error in Denying Request for a Special Jury Instruction on the Element of "Enterprise"

In Ground Three, Petitioner contends, as he did in state court, that the trial court erred in denying his request for a special jury instruction telling the jury what the state must prove as to the element of "enterprise."  ECF No. 1 at 8; ECF No. 12-2 at 163; ECF No. 12-12 at 207-08.  Specifically, he argues the state court deprived him of a fair trial by not giving his requested instruction that to prove enterprise, the state must prove (1) an ongoing organization, formal or informal, with the common purpose of engaging in a course of conduct, which (2) functions as a continuing unit.

Instead, the trial court gave an instruction that essentially tracked the relevant section of Florida Standard Jury Instruction (Crim.) 26.7 RICO—Conduct of or Participation in an Enterprise Through a Pattern of Racketeering Activity.  ECF No. 12-14 at 169-70 (emphasis added).  In rejecting counsel's request for a special instruction, the trial court determined the standard instruction "adequately defines that which the jury must find and encompasses the case law referred to by [defense counsel] in his requested special instruction."  ECF Doc. 12-12 at 208.

Petitioner contends the standard instruction did not encompass what the state must prove with respect to "enterprise."  ECF No. 1 at 8.  This claim raises a state law issue which was decided against Petitioner by the state trial court and appellate court.  As set forth in the discussion of Ground One, state courts are the in the best positions to determine issues of state law and that determination is binding on federal habeas review.  *See, supra,* Section III.A.  Thus, in the context of a jury instruction, "federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'"  *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (quoting *McGuire*, 502 U.S. at 72)).

Petitioner has not shown that, in the context of the entire trial and the entire jury charge, refusing the special instruction so infected the entire trial that the

resulting conviction violated due process. *See Jamerson*, 410 F.3d at 688. The State presented ample evidence Petitioner was employed by an ongoing formal organization—the Crestview Police Department—which had a common purpose and operated as a continuing unit. This was not disputed. The evidence showed that while part of that enterprise, Petitioner engaged in a pattern of racketeering activity in violation of the RICO Act. The ongoing organization, *i.e.*, the enterprise, is a separate element in the offense of racketeering and the organization itself need not be a criminal one. *See Gross v. State*, 765 So. 2d 39, 45 (Fla. 2000); *see also* § 895.02(3), Fla. Stat. (2012) (defining "enterprise" in part as including "illicit as well as licit enterprises and governmental, as well as other, entities.").

Also, while not everyone in the police department was involved in Petitioner's racketeering activity, a number of other officers were drawn into the scheme by Petitioner by virtue of his position and authority as a high-ranking officer in the police department. And the enterprise furnished Petitioner with a vehicle for his pattern of racketeering activity. The evidence showed Petitioner participated in the enterprise by engaging in substantially more than two predicate crimes with the same or similar intents and results or methods of commission, as the law and the jury instructions required. Petitioner has not shown that denying his special instruction deprived him of due process or violated any constitutional right. Habeas relief on this claim should be denied.

**D.      Ground Four: Trial Court Error in Denying Motion for New Trial**

In Ground Four, Floyd contends the trial court should have granted his motion for new trial because the prosecutor was allowed to ask about matters that were not relevant, and thus he was denied a fair trial.  Specifically, he argues it was improper for the prosecutor to question him about showing naked pictures on his cell phone to police officers.  It was also improper for the judge to allow the prosecutor to ask Petitioner about a letter referring to an administrative hearing relating to his academic degree after having granted the State's motion in limine to exclude evidence of the results of that administrative hearing.[5]  ECF No. 1 at 10.

The state court found no error in the trial court's evidentiary rulings and found no grounds were presented requiring a new trial.  State courts are the ultimate expositors of state law, including laws related to relevancy of evidence to the charged offense.  *Mullaney*, 421 U.S. at 691.  Only when the challenged evidence "so infused the trial with unfairness as to deny due process of law" will federal habeas relief be warranted.  *Estelle v. McGuire*, 502 U.S. 62, 75 (1991). This determination is made in light of the evidence as a whole.  *Felker v. Turpin*, 83 F.3d 1303, 1312 (11th Cir. 1996).

---

[5] The exclusion of evidence pertaining to the Criminal Justice Standards and Training Commission is not at issue in this ground.  Neither Petitioner's motion for new trial in state court nor his appeal to the First DCA cited the trial court's granting of the motion in limine as error.  *See* ECF No. 12-5 at 182-83;ECF BI,  No. 12-15 at 84.

Issues regarding the admission of evidence are based on interpretations of state law. As stated above, state courts are the ultimate expositors of state law, including laws related to relevancy of evidence to the charged offense. *Mullaney*, 421 U.S. at 691. Thus, only when the challenged evidence "so infused the trial with unfairness as to deny due process of law" will federal habeas relief be warranted. *Estelle v. McGuire*, 502 U.S. 62, 75 (1991). This determination is made in light of the evidence as a whole. *Felker v. Turpin*, 83 F.3d 1303, 1312 (11th Cir. 1996). Applying the habeas deferential standards discussed above, the undersigned finds neither of these occurrences rendered the trial fundamentally unfair.

Turning first to the issue of naked pictures, when the prosecutor asked on cross-examination if Petitioner showed naked pictures to other officers, he testified he did not remember doing so. On further questioning, defense counsel objected that there was no evidence of that occurring, but the objection was overruled. When again asked if he showed naked pictures of his girlfriend to officers, Petitioner denied it. ECF No. 12-13 at 269-70.

The court then initiated a bench conference and questioned the relevance of the questions, and further asked if the State had a witness to prove that Floyd showed the pictures. The prosecutor argued the questions were relevant because the "jocular manner in addressing women and talking about these things in front of other people at work supports and corroborates his intentions toward [Officer] Rachel Jordan and

the others to denigrate them . . . and that's why he fondled Ms. Jordan." ECF No. 12-13 at 270. The prosecutor also argued the evidence was relevant to show Petitioner's intent and purpose regarding the predicate incidents of bribery and battery.

The trial court concluded that "motivation for why people act is often relevant . . . if, and only if, there can be evidence produced suggesting that this type of conduct did, in fact, occur." ECF No. 12-13 at 271. The court further explained that "evidence that might suggest motivation for acting in a certain manner . . . which is consistent with the charged behavior is relevant." ECF No. 12-13 at 271. The prosecutor offered to proffer witnesses and evidence to prove the conduct, but the trial court ruled there would be no photos of naked women admitted, and that "[t]his gentleman has testified there are no pictures. That's it. I don't want to look at any pictures." ECF No. 12-13 at 273.

The prosecutor did not inquire of Petitioner any further about the photos of naked women and no witnesses were presented to prove that Petitioner showed the disputed photos. At the close of all the evidence, however, defense counsel stipulated with the prosecutor that the State had a good faith basis for asking Petitioner if he had shown cellphone photos of a naked woman and another photo of Petitioner having sex to other officers, and that two witnesses were present who could so testify. ECF No. 12-13 at 360-61. In light of the multitude of predicate

incidents of racketeering conduct proved by the State, this fleeting reference to showing naked pictures which was denied by Petitioner and not pursued by the State did not create a fundamental unfairness resulting in a denial of due process.

The undersigned will address the letter regarding administrative action next. At the outset of trial, the State moved in limine to preclude the defendant from introducing evidence of the findings of an administrative hearing before the Criminal Justice Standards and Training Commission relating to whether there was probable cause to find Petitioner had submitted a false claim relating to an academic degree or title when he applied to work at the Crestview Police Department. ECF Doc. 12-6 at 74-75. The trial court reserving final ruling but directed the parties not to discuss the issue without prior approval from the Court. *Id*. at 79.

During the trial, the prosecutor presented evidence to prove the alleged predicate conduct of false official statements by showing that in Floyd's sworn application to the Crestview Police Department, he misrepresented the fact that he left his employment at the Sarasota County Sheriff's Office while under investigation for presenting a false degree. ECF No. 12-17 at 86-87. Petitioner testified it was his belief the investigation was complete when he left Sarasota County and when he signed necessary paperwork for his job at the Crestview Police Department. ECF No. 12-13 at 125.

On cross-examination, the prosecutor asked Petitioner about a June 12, 2007 letter written by Hal Johnson, an attorney who represented Petitioner in the 2007 administrative proceedings before the Commission. ECF No. 12-13 at 129. Defense counsel objected to discussion of the letter.  The objection was based on the possibility the prosecutor might question Petitioner concerning the contents of the letter, and the questions and use of the letter were contrary to the State's prior motion in limine seeking to keep the defense from using the contents of the letter. ECF No. 12-13 at 128; ECF No. 12-2 at 161; ECF No. 12-5 at 185 (letter). Significantly, the trial court allowed only the prosecutor to reference the date of the letter to refresh Petitioner's recollection during cross-examination.  The trial court did not allow discussion of the contents of the letter. Petitioner clearly could not have been denied a fair trial by that admission.

Moreover, as stated above, the trial court did not rule on the motion in limine, but instead reserved that ruling depending on the circumstances of who the parties intended to use the information.  Indeed, a judge's pretrial ruling on a motion is limine is tentative and subject to change based on "the shifting sands of the trial in progress." *Hawker v. State*, 951 So. 2d 945, 950 (Fla. 4th DCA 2007).  Thus, the trial court did not violate its own ruling in allowing the limited reference to the date of the letter, and Petitioner's argument for a new trial simply had no merit.  It is recommended that federal habeas relief be denied on this claim.

**E.      Ground Five:  Trial Court Error in Denying Motion to Dismiss the Information and/or Strike Unrelated Predicate Acts**

Prior to trial, Petitioner filed a motion to dismiss the Third Amended Information on the ground that it contained allegations that "do not relate to the enterprise or the conduct of the enterprise, nor demonstrate a pattern of racketeering activity."  ECF No. 12-2 at 102.  The motion was denied without discussion.  ECF No. 12-2 at 209.   Similarly, Petitioner filed a motion to strike certain predicate incidents set forth in the statement of particulars on the ground that the alleged incidents "do not have similar intents, results, accomplices, victims, or methods of commissions (sic) or that are otherwise interrelated by distinguishing characteristics" and that they are "isolated incidents."  ECF No. 12-2 at 144-45.  In addition, he moved to strike allegations of official misconduct arising from battery against "Dustin Turner, Bradley Simmons, Amanda Brown and Dwight Dobson (vehicle crash at Church and Lee Streets), Ryan James, Kenny Siler, Phillip James, Dustin Emerson, and Jamichael Ewing" because, he argued, "the 'two incidents' requirement [of the RICO act] is not satisfied when the defendant is charged with two incidents of crimes which arose out the same transactions."  ECF No. 12-2 at 145.  This motion was also denied without discussion.  ECF No. 12-2 at 210.

The state courts disagreed that the Third Amended Information and the Statement of Particulars failed to allege acts that would, if proven, properly fall within the purview of the Florida RICO Act.  Petitioner's complaint is with the

Florida courts' interpretation of its own statutes and, even if alleged as a violation of due process, is a question of state law not cognizable in federal habeas. *See, e.g.*, *Swarthout*, 562 U.S. at 221-22; *Mullaney*, 421 U.S. at 691; *Branan*, 861 F.2d at 1508. Further, even if the state law claim was cognizable in this proceeding, it is without merit.

As discussed above in Section III.B., *supra,* the jury was properly instructed that, if two incidents arose on the same date, they should be considered only one incident for purposes of the Act. The jury was also instructed as to the required elements of the Florida RICO Act, which included instructions that the predicate acts must not be isolated and, once again, that if the acts occurred on the same date, the jury "should consider those incidents as one incident for that date." ECF No. 12-14 at 169-70, 172 (emphasis added).

The jury was provided evidence of scores of predicate incidents of crimes chargeable under the RICO Act, and the jury found that at least two of them, as required, met the requirements of the law as it was instructed. As stated above, it is presumed that the jury carefully followed the law as instructed. *Francis*, 471 U.S. at 324 n.9; *Weeks*, 528 U.S. at 234; *Hallford*, 459 F.3d at 1204. The state court's denial of the motion to dismiss and motion to strike was not contrary to law, or a misapplication of the facts, and did not render Petitioner's trial fundamentally unfair. It is recommended that federal habeas relief be denied on this claim.

### F.   Ground Six[6]:  IATC in Failing to Require a Special Verdict

In Ground Six, Petitioner argues his trial counsel was ineffective by failing to require a special verdict form that would have specified the two or more racketeering predicate incidents unanimously found to have been proven.  ECF No. 1 at 21.  This claim was raised in Petitioner's second amended Rule 3.850 motion for postconviction relief.  ECF No. 12-17 at 115.  The First DCA affirmed the denial of relief on this claim without written opinion.  Thus, the Court will look to the state court's 3.850 order.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that where the final state court to adjudicate the merits simply affirms the lower court decision, the federal court will "look through" to the last reasoned state-court decision).

In denying relief, the state court made two determinations.  First, the court found the claim to be "facially insufficient in that Defendant fails to allege proper prejudice."  ECF No. 12-18 at 34-35 (footnotes omitted).[7]  Second, even assuming

---

[6]  Petitioner raises six IATC claims and a cumulative error claim but does not assign a specific ground number to any.  ECF No. 1 at 17-37.  In the answer, Respondent designates the IATC claims and the cumulative error claim as Grounds Six through Twelve.  ECF No. 12 at 51-100.  That same numbering system will be followed here in discussion of the claims.

[7] Petitioner filed his initial Rule 3.850 motion, ECF No. 12-17 at 45, which was found to contain claims that were "facially and/or legally insufficient" and was dismissed with leave to amend.  ECF No. 12-17 at 72.  Petitioner's first amended motion, ECF No. 12-17 at 75, was also dismissed with leave to amend for the same reasons.  ECF No. 12-17 at 107.  Petitioner then filed his Second Amended Motion for Postconviction Relief, ECF No. 12-17 at 113, which was denied in a Final Order.  ECF No. 12-18 at 31.

the claim was facially sufficient, the court found a lack of prejudice because any such request by counsel would have been denied. *Id.*

As discussed above in Section III.B., *supra*, defense counsel did request for a special verdict form be used and the trial judge denied that request. Nonetheless, Petitioner contends here, as he did in state court, that trial counsel was ineffective for not citing, as an additional ground in support of the request for a special verdict, that the trial court's instruction that incidents occurring on the same date are to be considered as one incident for purposes of the RICO Act could have resulted in disagreement among the jurors as to which acts would count as one predicate incident. ECF No. 1 at 22.

The state court's rejection of this ground of relief was neither contrary to law nor a misapplication of the facts. First, counsel's performance could not have been deficient, since he did ask for the form, and could not have been prejudicial since the trial court denied the request. Second, Petitioner provides only speculation that the jury might disagree on which incidents occurring on the same date should be considered as one for purposes of the RICO Act. Such speculation ignores the fact that the jury was not only instructed that all incidents occurring on the same date were to be considered as one incident under the Act, ECF No. 12-14 at 172, but was also instructed the "verdict you render must be unanimous; that is, each juror must

agree to the same verdict" and "based on the evidence and on the law contained in these instructions." ECF No. 12-14 at 185, 186.

Third, and also as discussed in Section III.B., *supra*, the special verdict form was superfluous given the jury instruction. Thus, there was no prejudice to Petitioner. Also, the State submitted numerous incidents of predicate acts that were more than sufficient to support a finding of guilty and, thus, even had counsel been deficient in making those additional arguments (which he was not), Petitioner has not shown the outcome of the trial would have been different. Habeas relief should be denied on this claim.

## G. Ground Seven: IATC in Failing to Retain and Present an Independent Expert at Trial

Petitioner argues trial counsel rendered ineffective assistance by not retaining and presenting an expert to counter the testimony of Special Agent Knowles. Special Agent Knowles, of the FDLE, a "high liability" instructor of sworn law enforcement agents in Florida, testified about law enforcement standards governing use of force. He explained the FDLE is the authority that controls the criminal justice standards and curriculum for all the police academies in Florida. Special Agent Knowles described actions constituting deadly force and appropriate circumstances allowing for force by officers. He said actions such as a blow to the throat by a fist, blade hand, forearm, or elbow is considered deadly force and would not generally be appropriate in a citizen encounter. A hammer strike to the back of the neck presents

a safety concern and is not a standard law enforcement technique, nor is a rifle butt to the shoulder or neck, which is not taught as a technique and also constitutes deadly force. Use of strikes or kicks on a suspect who is handcuffed would be considered unreasonable.

Special Agent Knowles also testified that for force to be justified during a drug transaction, its use must be based on factors such as behavior of the subject showing escalation of force or resistance. He testified that ramming a subject's vehicle with the law enforcement vehicle is considered deadly force. Such action, if ever warranted, would require the subject vehicle to be fleeing from a forcible felony or other action endangering bystanders or officers, and that selling crack cocaine is not a forcible felony.

Finally, Special Agent Knowles testified regarding the appropriate use of a taser gun. He testified the use of a taser is limited to a suspect who is actively resisting or fleeing a lawful arrest and is not trained to be used on someone running a stop sign or in a stop and frisk situation. Use of a taser on a fellow officer is only to be done for certification purposes and must be voluntary. ECF No. 12-10 at 354-67.

Petitioner argues "the State's expert testified that the use of force employed in a number of predicate crimes was inappropriate or excessive," ECF No. 1 at 26, and, thus, counsel was prejudicially deficient in failing to obtain a similar witness to

counter Special Agent Knowles' evidence. Plaintiff suggests such a witness would have explained how Petitioner's actions were appropriate responses to civilian interactions and "likely would have resulted in an acquittal." ECF No. 1 at 26-27. He raised this same claim in his Rule 3.850 motion in state court. ECF No. 12-17 at 119.

In denying this claim, as the state court did with Ground Six, the court determined the claim was facially insufficient and, otherwise, without merit for a lack of showing of prejudice under *Strickland*. ECF No. 12-18 at 36. The court concluded the allegation Special Agent Knowles testified Petitioner's use of force in a number of situations was inappropriate or excessive was not borne out by the record. Instead, "Special Agent Knowles testified generally about law enforcement standards in the State." ECF No. 12-18 at 36. This adjudication is not contrary to, or an unreasonable application of, Federal law or an unreasonable determination of fact.

While other witnesses testified about numerous instances in which Floyd used a taser against a suspect, an incident in which Floyd landed on a suspect with a "hammer strike" forearm to the neck, and an incident in which Floyd used his police vehicle to ram a truck being driven by a suspect, Special Agent Knowles did not testify about whether any of these incidents constituted use of excessive force. Rather, as the state court correctly determined, he testified generally about types of

force that are taught and the circumstances under which that force may reasonably be applied against suspects or citizens.  In fact, when circumstances were mentioned that were too specific to the charges, defense counsel's objections were sustained. ECF No. 12-10 at 360-61, 364, 365.

Also, because Special Agent Knowles did not provide an opinion about whether any of the predicate acts constituted excessive force, Petitioner has not shown the state court would have allowed any countervailing expert witness.  Under Florida law, an expert is not generally allowed to express opinions as to the ultimate issue of guilt or innocence in a criminal case.  *Glendening v. State*, 536 So. 2d 212, 221 (Fla. 1988).  *See also Martinez v. State*, 761 So. 2d 1074, 1079 (Fla. 2000); *Brockington v. State*, 600 So. 2d 29, 30 (Fla. 2d DCA 1992).

Moreover, questions about what witnesses to call are strategic decisions and is one the courts will "seldom, if ever, second guess.  *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 956 (11th Cir. 2016).  Here, calling an expert witness could have placed greater credence to Special Agent Knowles' testimony than what was intended.  Thus, counsel could have made a strategic decision not to call such a witness.  *Chandler v. United States*, 218 F.3d 1305, 1314-1315 n.15 (11th Cir.2000). (the court should presume "that what the particular defense lawyer did at trial – for example, what witnesses he presented or did not present – were acts that some reasonable lawyer might do").

Regardless, the jury was instructed that violation of the rules and standards was not alleged as a crime in the case. ECF No. 12-14 at 182. Petitioner testified in his defense that he believed the force he used on suspects or citizens was reasonably necessary under the circumstances. The court also instructed the jury on justifiable use of force by a law enforcement officer, stating in part that "[t]he officer is justified in the use of any force that he reasonably believes necessary to defend himself or another from bodily harm while making an arrest" and "[t]hat force is also justifiable when necessarily used, one, in retaking a felon who has escaped; two, in arresting a felon who is fleeing from justice." The jury was also instructed that a law enforcement officer is justified in the use of any force that he reasonably believes to be necessary to prevent the escape of the arrested person from custody. ECF No. 12-14 at 174.

Thus, the jury was fully instructed as to justifiable use of force by law enforcement officers and was provided necessary information to determine if Petitioner's actions in a number of incidents testified to by witnesses constituted battery or were justified. In light of the evidence and instructions, trial counsel was not deficient in failing to call an expert on regulations and standards for use of force as it would apply to the specific predicate crimes alleged, and Petitioner has not shown any such failure, even if deficient, was prejudicial. Not only has Petitioner failed to show such an expert would have been allowed, but also Petitioner provides

only conjecture that if trial counsel had presented an expert as described in the petition, the outcome of the trial would have been different.  This speculation does not undermine confidence in the verdict and does not meet the prejudice requirement of *Strickland*, as the state court concluded.  Habeas relief on this claim should be denied.

### H.    Ground Eight:  IATC in Failing to Properly Object to Prior Bad Acts Offered as Evidence of a Predicate Offense and Failing to Call Witnesses to Rebut the Testimony of M.N.

In Ground Eight, Floyd argues, as he did in state court, that trial counsel failed to properly object or move to exclude the testimony of M.N. that Floyd touched her against her will and that he had sex with her against her will.  ECF No. 12-17 at 123. He also argues that trial counsel was deficient for failing to call witnesses to testify about an investigation into M.N.'s allegations once the state opened to the door to the reasons no charges were filed.  He contends counsel knew and could have presented witnesses to testify that in an independent investigation, detectives concluded that formal charges of sexual battery were not warranted.  ECF No. 1 at 28-30.  This argument is simply the other side of the coin to Petitioner's argument of trial court error in allowing this testimony, as discussed in Section III.A., *supra*.

Petitioner raised this issue in his 3.850 motion and appealed the denial of this IATC claim to the First DCA, raising these same arguments and further contending the postconviction court was required to take his allegation as true that

M.N. lied when she said she withdrew the complaint because she was fearful of Petitioner and did not think the complaint would go anywhere.  ECF No. 12-19 at 141-43.  The First DCA affirmed denial of relief without discussion.  Thus, the Court will "look through" that order to the state court's 3.850 order.  *See Wilson*, 138 S. Ct. at 1192.

The state postconviction court determined a hearing on this claim was not required and denied the claim, finding Petitioner failed to demonstrate deficient performance or prejudice.  ECF No. 12-18 at 37.  Agreeing with the State, the court found trial counsel did properly object to M.N.'s testimony and that, although Petitioner claimed counsel knew that M.N. had falsely accused others of similar crimes, Petitioner does not provide the names of witnesses who were available and would have testified to that fact at trial.  ECF No. 12-18 at 37-38, n.7.  The state court's determination was neither contrary to law nor a misapplication of the facts.

Even if trial counsel had offered the testimony that Petitioner contends was available to rebut M.N., it is not certain it would have been admissible.  A detective's opinion that criminal charges were not warranted against Petitioner for his conduct with M.N. would have been an opinion on Petitioner's guilt or innocence and an improper indictment of M.N.'s credibility.  A police officer's statements expressing an opinion on the credibility, guilt, or innocence of the accused are generally inadmissible under Florida law.  *Bush v. State*, 295 So. 3d

179, 205 (Fla. 2020) (citing *Jackson v. State*, 107 So. 3d 328, 339-40 (Fla. 2012)). This same principle applies to testimony by one witness as to the credibility of another witness. Such testimony is inadmissible and invades the province of the jury. *See Tumblin v. State*, 29 So. 3d 1093, 1101 (Fla. 2010). It is especially harmful when the testimony is offered by a law enforcement officer. *Id.* Under these principles, trial counsel's performance in not attempting to present such evidence was not shown to be deficient.

Even if trial counsel was deficient in failing to present evidence that M.N. withdrew her complaint because detectives concluded there was insufficient evidence to charge him or that she had accused others of similar conduct, Petitioner has failed to demonstrate prejudice. Under *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

Petitioner did not demonstrate on this record that, but for the alleged error of counsel, there is a reasonable probability that the result of the proceeding would have been different, where a reasonable probability is one sufficient to undermine confidence in the outcome.  M.N. testified that Petitioner had sex with her against her will when she went to his home.  The predicate conduct alleged in the Information included the allegation of simple battery—touching or striking another person against that person's will.  Battery is a predicate crime under the RICO Act. *See* § 784.03(1), Fla. Stat. (2007); § 895.02(1)(a), Fla. Stat. (2007).  Whether detectives in an independent investigation concluded that sexual battery charges were not warranted would not have disproved the allegation that an unwanted touching occurred when M.N. visited Petitioner.

The State also presented evidence Defendant joked and bragged about M.N.'s allegations while on duty at a work function, just as he had done after he improperly touched a female police officer and introduced her as "whore" because she had previously posed in an undercover prostitution ring.

Also, as discussed herein, the State presented evidence of numerous other battery offenses and other predicate incidents of crimes that satisfied the requirement of proof under the RICO Act as two or more incidents of racketeering activity.  Petitioner has not shown that the State court's adjudication was contrary to or an unreasonable application of any federal law as determined by the Supreme

Court or that it was an unreasonable determination of the facts in light of the evidence.  Nor has he provided a basis to find that this court's confidence in the outcome of the trial is undermined.  Petitioner is not entitled to habeas relief on this claim.

## I.    Ground Nine:  IATC in Failing to Offer Evidence That Petitioner Won a Motion for Summary Judgment in the *Siler* Lawsuit

Petitioner argues trial counsel rendered ineffective assistance by failing to present evidence to impeach Kenneth Siler, a business owner in Crestview, and to rebut any implication of wrongdoing suggested by the filing of his suit against Petitioner.  Siler was walking on Main Street in Crestview with his eight-year-old daughter when he noticed some officers handling a matter.  He said he was conversing with one of the officers when he saw Petitioner run a stop sign in what appeared to be his personal car with no lights or siren.  Siler called across the street to Petitioner that he saw him run the stop sign.  Siler said Petitioner crossed over to him and told him to take anger management classes or go to jail.  Siler said Petitioner accused him of interfering with what the police were doing and then "lunged and put his hand in my chest and said, you had to go."  ECF No. 12-10 at 34.  Siler testified when he tried to remove Petitioner's hand, Petitioner spun him around, pulling a taser on him.  Petitioner instructed officers to arrest Siler, which they did, but the felony charge was dismissed.

Siler later sued Petitioner and the Chief of Police in federal court alleging, *inter alia,* violation of civil rights and due process. Siler did not testify about his lawsuit against Petitioner, but several other witnesses briefly mentioned the suit in the course of describing their experiences at the police department after they were deposed in the case. Petitioner argues evidence that Siler sued Petitioner was prejudicial and made it appear Petitioner was guilty of wrongdoing when, in fact, the suit was resolved on summary judgment against Siler. Petitioner contends trial counsel should have introduced evidence that summary judgment was entered in the federal suit. He raised this same claim in his motion for postconviction relief in state court.

The postconviction court denied the claim, concluding it was facially insufficient for failure, after several attempts, to allege proper prejudice. The court went on to conclude that even if the claim were sufficiently pled, it failed to demonstrate either deficiency or prejudice because even had counsel moved to introduce the summary judgment order, it would have been denied as inadmissible hearsay. ECF No. 12-18 at 39.

In Florida, "[a] court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'" *BDO Seidman, LLP v. Banco Espirito Santo Int'l*, 38 So. 3d 874, 880 (Fla. 3d DCA 2010). *See also Hartong v. Bernhart*, 128 So. 3d 858, 863 (Fla. 5th DCA 2013). Even if evidence

of the federal summary judgment was not found to be inadmissible hearsay, it would likely have been subject to exclusion under section 90.403, Florida Statutes (2013), which provides that "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." *Id.*

The standard for applying this exclusion is as follows:

This statute compels the trial court to weigh the danger of unfair prejudice against the probative value. In applying the balancing test, the trial court necessarily exercises its discretion.

*Twilegar v. State*, 42 So. 3d 177, 195 (Fla. 2010) (quoting *State v. McClain*, 525 So. 2d 420, 422 (Fla. 1988)). "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

The federal order on summary judgment that Petitioner asserts should have been presented would have raised confusing factual and legal issues that could only distract the jury from its duty to find the facts and apply the Florida law as instructed. It would have been confusing to the jury to hear a discussion of the claims made in the federal suit or the grounds relied on for the summary judgment, including requirements of proper pleading, the issue and applicability of qualified immunity of law enforcement officers, and proof necessary to prove a violation of civil rights.

The reasons why a federal suit is dismissed on summary judgment are varied and are not necessarily relevant in a state criminal prosecution. These collateral considerations would present a substantial risk of unfair prejudice, confusion of issues, and misleading the jury, § 90.403, Fla. Stat., by diverting the jury's focus away from the evidence presented in the trial and the law to be applied to the alleged RICO Act violation.

In light of Florida law, trial counsel was not required to attempt to present evidence that would likely be inadmissible as hearsay and which would likely be inadmissible under § 90.403 as unnecessarily confusing for the jury. *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act . . . ."); *see also Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir.1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Petitioner is not entitled to habeas relief on this claim.

J.      **Ground Ten:  IATC in Failing to Investigate, Research, and Prepare for Trial**

Petitioner claims trial counsel rendered ineffective assistance by failing to investigate, research, and prepare for trial.  He makes general allegations that counsel's failure was apparent from the beginning of trial in cross-examination of witnesses whom he had not spoken to prior to trial.  He argues there were unspecified inconsistencies that counsel could have used to impeach witnesses if he had been more prepared for their testimony.  ECF No. 1 at 34.  He raised this same claim in state court in his motion for postconviction relief.  ECF No. 12-17 at 131.  The state court found the claim facially insufficiently for failing to allege proper prejudice. The First DCA affirmed denial of relief on this claim.

The Respondent correctly notes that the state court's conclusion that the claim was insufficiently pled is a ruling on the merits and entitled to AEDPA deference. *See Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012).  The state court's finding that the claim was insufficiently plead as to prejudice was not contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts.   Petitioner's claim makes general, conclusory allegations of deficiency and argues that but for counsel's poor but unspecified trial preparation the result of the proceeding would have been different. ECF No. 1 at 35.  Such conclusory allegations do not merit relief in federal habeas proceedings.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 (11th Cir. 2012); *Wilson v.*

*United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

In his state court postconviction motion, Petitioner cites examples of information that he contends counsel could have discovered and used to impeach witnesses Purvines, Jordan, and Faircloth, who all testified that Floyd intimidated them into falsifying police records. ECF No. 12-17 at 132. That alleged impeachment consisted of information that all three officers had socialized with Petitioner.[8] However, this information, even if it had been brought out in cross-examination, does not demonstrate a reasonable probability that the result of the proceeding would have been different. Petitioner has not demonstrated that the state court's adjudication meets the requirements of 28 U.S.C. § 2254(d) for a writ of habeas corpus. Habeas relief should be denied on this claim.

## K. Ground Eleven: IATC in Failing to Object to an Erroneous Jury Instruction

Floyd argues trial counsel rendered ineffective assistance by not objecting when the trial court orally defined "enterprise," in pertinent part, as follows:

> An enterprise is an ongoing organization, formal or informal, that **both** functions as a continuing unit **or** has a common purpose of engaging in a course of conduct.

---

[8] The record shows that defense counsel did cross examine Officer Purvines about having socialized with Floyd and that Floyd promoted him to sergeant. ECF No. 12-8 at 182. The record also shows that defense counsel deposed Office Purvines. ECF No. 12-8 at 131.

ECF No. 12-14 at 170 (emphasis supplied).  He contends constitutional error occurred because, in reading the instruction to the jury, the judge used the term "or" instead of "and" as it appears in the standard jury instruction promulgated by the Florida Supreme Court.  He concedes the written instructions given to the jury correctly stated the standard instruction defining "enterprise," but argues that under Florida law, it cannot be assumed that the jury ignored the error in the oral instructions. *Id.* (citing *Valentine v. State*, 774 So. 2d 934, 937 (Fla. 5th DCA 2001). *But see Polls v. State*, 134 So. 3d 1068, 1071 (Fla. 4th DCA 2013) (disagreeing with decision in *Valentine* and finding correct written instructions prevented jury from being misled by a misstated jury instruction).

Petitioner raised this same IATC claim in his Rule 3.850 motion in state court. The postconviction court denied the claim because it was facially insufficient for failing to allege proper prejudice and because Floyd had not demonstrated deficient performance or prejudice.  Specifically, the jury had the correct written jury instruction during deliberations and the record showed Floyd never disputed he was employed by the Crestview Police Department or that the police department met the statutory definition of "enterprise."  ECF No. 12-18 at 41.  The First DCA affirmed denial of relief on this claim without discussion, which constitutes an adjudication on the merits that is entitled to AEDPA deference.  It should also be noted that in his direct appeal from judgment and sentence, Floyd argued that the trial judge's

misstatement of the standard instruction in the oral instructions to the jury constituted fundamental error, which the First DCA also rejected.

Even assuming trial counsel's failure to object to the instruction was deficient, and considering prejudice *de novo*, Petitioner has not met the second prong of *Strickland*. He has not demonstrated that, but for counsel's alleged error in failing to object, there is a reasonable probability sufficient to undermine confidence that the result of the proceeding would have been different. The jury was made well aware that the alleged "enterprise" under the RICO Act was the Crestview Police Department. The state court was correct there was no dispute over the fact that Petitioner's predicate crimes occurred during his application for and employment by that police department. Petitioner has provided no basis to find confidence in the outcome is undermined by the judge's misstatement when the jury had the correct instructions before it during deliberations and the issue of "enterprise" was not a disputed one.[9]

"To obtain habeas relief 'a state prisoner must show that the state court's ruling on the claim being presented in the federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond

---

[9] "[I]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Williamson*, 805 F.3d at 1017 (quoting *Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1326 (11th Cir. 2013) (quoting *Strickland,* 466 U.S. at 697)).

any possibility for fairminded disagreement.' " *Williamson v. Fla. Dep't of Corr.*, 805 F.3d at 1016 (quoting *Reese v. Sec'y, Fla. Dep't of Corr.,* 675 F.3d 1277, 1286 (11th Cir.2012) (quoting *Richter,* 562 U.S. at 103).   Petitioner has not met this standard and habeas relief should be denied.

## L.    Ground Twelve:  Cumulative IATC error

In his last claim, Petitioner argues "[a]ll of the errors committed by counsel in the Petitioner's case, considered either individually or together, resulted in the Petitioner being denial a fair trial."  ECF No. 1 at 37.  He raised this claim below in his Second Amended Motion for Postconviction Relief, ECF No. 12-17 at 140, which was denied as without merit.  ECF No. 12-18 at 41.  The First DCA affirmed without discussion.  Petitioner cannot prevail on the claim in this Court.  He has not shown specific errors of counsel which undermine confidence in his conviction either individually or in their cumulative effect.

The Eleventh Circuit has rejected an argument of cumulative error in the context of IATC claims.  *See Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564-65 (11th Cir. 2009).  As the Eleventh Circuit explained, while "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim", "the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific

errors of counsel undermined the reliability of the finding of guilt' ". *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984))).

Instead, courts must "address claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that we find in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *United States v. Chalker,* 966 F.3d 1177, 1193 (11th Cir. 2020) (quoting *United States v. Margarita Garcia*, 906 F.3d 1255, 1280 (11th Cir. 2018)). Where no errors are demonstrated in the trial court's rulings, "we are left with no errors to accumulate." *Chalker*, 966 F.3d at 1193. Thus, because each individual ground asserted by Petitioner fails, this ground likewise fails and should be denied. *See, e.g.*, *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative error because none of Morris's individual claims have any merit and "therefore we have nothing to accumulate"). Additionally, for the reasons discussed above, substantial evidence supported the finding of guilt. Petitioner is not entitled to habeas relief on this claim.

## IV.  CONCLUSION

For the reasons stated above, Floyd is not entitled to habeas relief on any of the grounds raised in the § 2254 petition.

## A.    Evidentiary Hearing

The undersigned also finds that an evidentiary hearing is not warranted.  In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Here, the issues involved do not turn on any contested factual issue.  Therefore, an evidentiary hearing would not assist in entitling him to relief and is not warranted.

## B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is

also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.     Ricky D. Dixon succeeded Mark S. Inch as Secretary of the Florida Department of Corrections and is automatically substituted as the Respondent. *See* Fed. R. Civ. P. 25(d). The Clerk is directed to update the case file information to reflect Ricky D. Dixon as Respondent.

Additionally, it is respectfully RECOMMENDED:

1.     That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Floyd*, 2012 CF 456 C, in the First Judicial Circuit, in and for Okaloosa County, Florida, ECF No. 1, be DENIED without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 7th day of April, 2022.


_/s/ Hope Thai Cannon_
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.